[No. 24884–7–I.   Division One.   April 29, 1991.]

ALAN SKILES, ET AL, *Respondents,* v. FARMERS INSURANCE
COMPANY, INC., *Defendant,* SAFECO INSURANCE
COMPANY, *Appellant.*

*John C. Belcher* and *Belcher, Swanson, Lackey, Doran & Lewis,* for appellant.

*Michael A. Winslow, Colonel F. Betz,* and *Youngquist & Betz,* for respondents.

GROSSE, C.J.—Safeco Insurance Company (Safeco) seeks review of the trial court's order granting summary judgment to Alan and Lori Skiles (Skiles) and David and Mary Ann Yamashita[1] (Yamashita).

Alan Skiles was severely injured in an automobile/ pedestrian accident in 1985. He will never fully recover from the injuries suffered in this accident. Skiles' insurance policy was with Farmers Insurance Company, Inc. (Farmers) which provided personal injury protection (PIP) benefits and underinsured motorist coverage (UIM). Farmers paid Skiles the UIM policy limits of $25,000 and also paid $20,000 in PIP benefits. Skiles was represented by attorney David Yamashita. Skiles sued Cleave, the tortfeasor/driver of the auto which hit him. Cleave maintained liability insurance with Safeco.

The personal injury lawsuit between Skiles and Cleave was settled under an agreement in which Safeco paid Skiles $150,000 in cash and provided an annuity or structured settlement to be paid to Skiles over a term of years, or to his estate if he dies. Cleave's liability policy through Safeco had a limit of $300,000.[2]

---

[1] David Yamashita is the attorney for the Skiles; Mary Ann is his spouse.

[2] The record indicates, through an affidavit of an economic expert and further by determination of a Superior Court at a reasonableness hearing on the settlement, that the present value of the total settlement provided by Safeco was within a range with a minimum of $270,000 with the maximum of the range being much more. Considering all the factors, the expert indicated values in excess of $300,000. Safeco would not divulge the amount the annuity cost it, and the trial court believed it unnecessary to force Safeco to reveal said cost because it was agreed by all parties that the amount of the settlement was worth more than the $300,000 policy limits, and that the amount of injury was far in excess of that amount. In an "Agreed Order Determining Reasonableness and Approving Settlement With Defendant Cleave," the Superior Court determined that the value of the settlement between Cleave and Skiles was worth at least $300,000, and that

As part of the settlement with Skiles, Safeco obtained a release and hold harmless agreement signed by Mr. and Mrs. Skiles and their attorney Mr. Yamashita. The agreement provided, in pertinent part:

> [W]e agree to see to it that all subrogation claims arising out of the accident involved in this case, including . . . liens or subrogation rights in favor of any insurance company who has paid benefits on our behalf . . . are satisfied or paid to the end that you and your principals . . . [and] Safeco Insurance Company . . . are held harmless, indemnified and defended against any and all such claims[.]

Following the settlement, Farmers sought reimbursement from Safeco of the $20,000 in PIP benefits it had paid to Skiles pursuant to its claimed subrogation rights.[3] Although Yamashita indicated in an affidavit that he and Skiles had no notice of the letters between Farmers and Safeco regarding the PIP subrogation rights, he knew what payments had been made to Skiles pursuant to the PIP coverage under the Farmers policy.

In connection with its claim against Safeco, Farmers sought and obtained intercompany arbitration with Safeco. While Safeco and Yamashita believed that arbitration was the improper forum for settling the claim, the case proceeded to arbitration. Neither Safeco nor Yamashita took steps to prevent the arbitration from going forth. Safeco tendered the defense of this matter to Skiles and Yamashita. Tender of defense was accepted by Yamashita under protest, but he did represent Safeco in the arbitration. Safeco lost the arbitration proceeding and for whatever reason Yamashita/Safeco decided not to challenge the decision. As pointed out by the trial court, the arbitration award was most likely erroneous as a matter of law under

any judgment which might thereafter be awarded to Skiles against other defendants (City of Sedro Woolley and Puget Sound Power and Light) would be offset in the amount of $315,000.

[3]By prior agreement with Yamashita, Farmers allegedly agreed to forgo any subrogation rights it had with regard to the UIM coverage. Yamashita mistakenly believed the same to be true as to the PIP benefits.

the *Thiringer* doctrine.[4] However, Safeco paid Farmers the $20,000 pursuant to the arbitration, did not challenge the arbitration determination, and sought reimbursement of the $20,000 from Skiles and Yamashita under the hold harmless agreement. Safeco's contention throughout this case has been that once the hold harmless agreement was signed, if it lost to Farmers in arbitration, Skiles and Yamashita would be liable under the hold harmless agreement. Safeco argues it is indemnified from further claims.

On summary judgment, the trial court denied Safeco's claim. The reasoning behind the court's decision was that Safeco paid Farmers in connection with Farmers' subrogation claim, and now "stands in the shoes" of Farmers as a subrogee of any subrogation claim Farmers may have had against its insured, Skiles. Thus, any claim of Safeco against Skiles and Yamashita, which is specifically a subrogation claim, is subject to the same legal rules concerning subrogation that would apply in a dispute between Farmers and Skiles. Because the record shows Skiles has not been fully compensated for his loss,[5] the court indicated that Farmers would not be entitled to any recovery against its insured, Skiles,[6] and therefore neither would Safeco.

Safeco claims the trial court erred in determining that as a matter of law Safeco stood in the shoes of Farmers and under the *Thiringer* doctrine was therefore precluded from obtaining reimbursement. Safeco claims the trial court was incorrect and confused Safeco's right to indemnification with the merits of the claim against Safeco giving rise to

---

[4]The general rule espoused in *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978) is that, while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tortfeasor responsible for his damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss.

[5]There seems to be no dispute that the damages to Skiles are in excess of the amounts involved in the case here, possibly as much as $1 million.

[6]It would not be so entitled by application of the *Thiringer* doctrine.

the need for indemnification. In other words, Safeco claims its right to reimbursement from Skiles and Yamashita is based on the hold harmless agreement and not as a subrogee of any subrogation claim Farmers may have had against its insured. We agree.

Indemnification agreements made in order to settle a case must be interpreted so as to carry out the purpose for which they are executed.

> "'. . . Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms.'"

*Continental Cas. Co. v. Municipality of Metro Seattle,* 66 Wn.2d 831, 835, 405 P.2d 581 (1965) (quoting *Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 488, 392 P.2d 450 (1964)).

Here, Safeco settled with the Skiles only after they and their attorney agreed that the $150,000 plus the annuity would be all that Safeco had to pay in connection with the accident. The hold harmless agreement and letter were executed by the parties in order to insure that Safeco did not have to pay additional monies in settlement.

In this state it is well established that public policy requires an injured party to be made whole before requiring reimbursement of an injured party's insurance carrier. *Thiringer v. American Motors Ins. Co.,* 91 Wn.2d 215, 588 P.2d 191 (1978). *See also Leader Nat'l Ins. Co. v. Torres,* 113 Wn.2d 366, 779 P.2d 722 (1989); *Hamilton v. Farmers Ins. Co.,* 107 Wn.2d 721, 733 P.2d 213 (1987); *Elovich v. Nationwide Ins. Co.,* 104 Wn.2d 543, 707 P.2d 1319 (1985). Safeco does not quarrel with the conclusion that Farmers' subrogation claim should have been barred by the *Thiringer* doctrine. However, Skiles and Yamashita could have, and should have, sought judicial relief from the arbitration award. They did not. Mr. Yamashita was handling the

defense of the arbitration claim against Safeco and decided not to seek judicial review.

Safeco's right to indemnification is not dependent on the rightfulness of the claim. Its action here is based on the indemnification agreement. The intercompany arbitration committee ruled against Safeco and as a result it was required to pay Farmers $20,000. Under the indemnification agreement Skiles and Yamashita are required to indemnify Safeco against this loss.

The opinion of *State Farm Mut. Auto. Ins. Co. v. Lou,* 36 Wn. App. 838, 678 P.2d 339 (1984) is instructive. Lou, a passenger in a car driven by Nelson, was injured when the Nelson car was rear–ended by a car driven by Justice. Nelson was insured by State Farm which paid Lou's medical expenses and lost wages under its PIP endorsement. The policy provided that State Farm was subrogated to Lou's right to recover this sum from Justice, who was insured by Continental Insurance Company. The court determined that a general release of a wrongdoer in conjunction with a settlement for *less than the limits* of the wrongdoer's insurance coverage prejudiced the subrogation rights of the insurer of the injured, releasing party. Continental was in a similar position as Safeco is here. The court found that a settlement agreement between Justice, Continental, and Lou prejudiced State Farm as to Lou because the settlement was for less than the policy limits of the wrongdoer. The court went on to note that it need not determine Continental's liability to State Farm because of the existence of a hold harmless indemnity agreement between Lou and Continental. *State Farm Mut. Auto. Ins. Co. v. Lou,* 36 Wn. App. at 840. The same is true here. Safeco is entitled to recover under the hold harmless contractual agreement. Therefore the decision of the trial court on summary judgment is reversed. The case is remanded with instructions to

enter judgment for Safeco in the amount of $20,000 against Skiles and Yamashita.

SCHOLFIELD and FORREST, JJ., concur.

Reconsideration denied August 22, 1991.