[No. 35502-3-I.   Division One.   May 6, 1996.]

VIKING INSURANCE COMPANY, *Appellant*, v. GREGORY NELSON, ET AL., *Respondents*.

*William W. Spencer, Ronald L. Unger,* and *Murray, Dunham & Murray,* for appellant.

*David P. Hansen* and *Smith & Hansen*; and *Martin T. Collier, Glenn S. Draper,* and *Betts, Patterson & Mines, P.S.,* for respondents.

WEBSTER, J. — Viking Insurance Co. is suing the tort-

feasor to recover the personal injury protection (PIP) benefits that it paid to its insured. The tortfeasor contends that the injured party extinguished the insurer's subrogation interest by executing a general release and accepting a settlement that included an allocation for the PIP benefits. The trial court granted summary judgment to the tortfeasor. We reverse.

# I
## FACTS

Gregory Nelson's contract for automobile insurance with CIGNA (d/b/a Insurance Company of North America) protected him against liability claims up to $100,000. Tildrea Clark had automobile insurance through Viking Insurance Co. (hereafter Viking). Nelson caused an automobile accident in which Clark was injured.

Viking paid Clark $18,505 in PIP benefits. Viking notified CIGNA that it had paid PIP benefits to Clark, and requested reimbursement. Viking also requested information as to Nelson's policy limits, so that it could anticipate an underinsured motorist (UIM) claim by Clark. CIGNA informed Viking that Nelson had $100,000 in coverage and that $6,975 had been paid for Clark's property damage, leaving $93,025.

Clark's attorney, Don Buckland, wrote to CIGNA, contending that Viking would have no subrogation interest in any settlement between CIGNA and Clark because Clark would not be made whole by Nelson's remaining coverage. Buckland demanded that Nelson's remaining policy limits be paid directly to Clark:

> As such, I would ask that you (CIGNA) pay *all* the third-party liability limits to our office and we, in turn will hold the disputed subrogated amounts in an interest-bearing trust account until resolution of the underlying UIM matter. We would give you a Hold Harmless Agreement to such effect.

CIGNA counter-offered $70,000, which Clark rejected.

Viking refused Clark's request to waive its subrogated interest, advised Buckland that it would seek recovery of the PIP benefits directly from CIGNA, and requested that Clark/Buckland not prejudice Viking's right of recovery. CIGNA subsequently offered $72,250, and Buckland then wrote to Viking (with a copy to Clark):

> I have advised the Clarks to accept the third party carrier's offer of $72,250 and sign releases to this effect. Your subrogated PIP lien of $18,505.10 has been included in the settlement check from CIGNA made payable to the Clarks and our firm; the lien amount will be put in a separate interest-bearing account pending resolution of the underlying UIM claim.

Clark "reluctantly" accepted CIGNA's offer, intending to seek a waiver of Viking's PIP subrogation interest and pursue a UIM claim.

Buckland sent Clark the settlement checks for endorsement and a general release in favor of Nelson (the release does not refer to Viking's subrogation interest). When Clark returned the release and the checks, Buckland disbursed her share of the settlement, and put $18,505 in a segregated account.

Buckland later withdrew as Clark's attorney and sent Clark the $18,505. He also informed CIGNA that he would not sign a hold harmless agreement, but understood that the Clarks were dealing directly with Viking regarding the PIP and UIM claims.

Viking sued Nelson, alleging that his negligence proximately caused an accident, that Viking paid Clark $18,505 and was subrogated to Clark's interest, and that Nelson was liable for the PIP money paid Clark by Viking. Nelson sued Buckland and Buckland & Schumm [collectively hereinafter "Buckland"], alleging breach of attorney client relationship, and misrepresentation. Buckland sued Clark, seeking any damages that it was required to pay.

Buckland moved for summary judgment, contending

that Clark's settlement with Nelson extinguished Viking's right to subrogation. Buckland also sought summary judgment against Nelson on the grounds that he was not Nelson's attorney. The trial court granted summary judgment in favor of Nelson, holding that Clark's execution of a general release extinguished Viking's subrogation interest. The trial court also granted summary judgment in favor of Buckland, presumably because Buckland was not liable to Nelson if Nelson was not liable to Viking.

## II

## DISCUSSION

### A.

### Viking's Subrogation Interest

Viking contends that its right to subrogation was not extinguished by Clark's general release of Nelson. Viking relies upon *Leader Nat'l. Ins. Co. v. Torres*, 113 Wn.2d 366, 779 P.2d 722 (1989).

In *Torres*, Torres injured Maier in an automobile accident. Leader National, Maier's insurer, paid him $10,000 in PIP benefits. Maier sued Torres for unreimbursed medical expenses ($5,211.10), wage loss, and general damages. 113 Wn.2d at 368. Maier and Torres agreed on a $10,000 settlement, a settlement that did not exhaust Torres's assets. Leader National objected to any release which would prejudice its subrogation right, but Maier signed a general release in favor of Torres. Leader National sued Torres to recover the $10,000 in PIP benefits. Torres contended that Maier's general release extinguished Leader's right to subrogation. The trial court granted summary judgment to Torres. The Supreme Court held that a general release does not extinguish a subrogation claim when (1) the tortfeasor knows of the insurer's payment and right of subrogation, (2) the insurer does not consent to the settlement, and (3) the settlement does not exhaust the tortfeasor's assets. 113 Wn.2d at 373-74. Nel-

son and Buckland contend that *Torres* should not be applied to Viking's subrogation claim.

### 1. *Danger of Tortfeasor Paying Twice*

Nelson and Buckland first distinguish this case from *Torres* on the grounds that Nelson paid Viking's PIP claim (although to Clark), and may be required to pay the PIP claim twice. In this case, Nelson may be compelled to reimburse Viking's PIP payment, and, assuming that Nelson already paid the full PIP amount to Clark, he will pay twice. Nevertheless, this risk does not justify forsaking the rule enunciated in *Torres*. The law is concerned more with full compensation of injured parties than the risk of double payment by tortfeasors. IV GEORGE E. PALMER, LAW OF RESTITUTION § 23.18, at 467 (1978). Furthermore, Nelson could have avoided his current predicament by negotiating with both Clark *and* Viking, or by procuring the hold harmless agreement which Buckland promised. CIGNA instead tried to force litigation between the PIP insurer and the injured party. *Torres* encourages negotiation and settlement of *all* claims arising out of an accident, to avoid satellite litigation, such as this suit.[1]

### 2. *Eventual Recovery From The Injured Party*

Nelson and Buckland next argue that the possibility of Nelson's eventual recovery of these funds from Clark distinguishes *Torres*. Nelson filed a third party action against Buckland, and Buckland then sued his former client, Clark. If Clark is found liable for the PIP payments, Clark's liability will be premised on her breach of a promise, when accepting Nelson's settlement, to settle Viking's PIP interest. We will enforce an injured party's

---

[1]CIGNA would not, as respondents suggest, breach the duty of good faith owed its insured by negotiating separately with Clark and Viking. CIGNA could settle Clark's claim separately from Viking's claim and receive a release from each party. Whether the settlements and/or litigation were piecemeal or consolidated, CIGNA's duty of good faith does not change: it is liable to the insured for failing to make a good faith attempt to effect a settlement if its investigation discloses liability on the insured's part and the insurer's failure to settle is attributable to bad faith or negligence. *Tank v. State Farm Fire & Casualty Co.*, 38 Wn. App. 438, 442, 686 P.2d 1127 (1984), *aff'd in part, rev. in part*, 105 Wn.2d 381, 715 P.2d 1133 (1986).

promise to satisfy subrogation claims. *Skiles v. Farmers Ins. Co.,* 61 Wn. App. 943, 948, 814 P.2d 666 (1991), *rev. denied,* 118 Wn.2d 1009, 824 P.2d 490 (1992). We perceive no conflict between *Torres* and *Skiles,* as one deals with enforcement of subrogation interests, while the other addresses an independent promise to satisfy such interests. Clark's ultimate liability in this case does not suggest that we should curtail the *Torres* rule.

### 3. *Risk Of Overcompensating the Injured Party*

Nelson and Buckland also contend that Clark may be overcompensated if Viking recovers its PIP claim from Nelson. A fundamental principle of tort law is full compensation of the injured person. Given Washington's prohibition on punitive damage recovery, few injured persons are overcompensated. While the law should not allow, nor facilitate, double recovery, the risk of overcompensation is substantially less than the difficulty an injured party faces in becoming fully compensated.

Furthermore, as applied to this case, *Torres,* in conjunction with *Skiles,* does not allow Clark to be overcompensated. The fact finder will ultimately determine whether Clark promised Nelson that she would satisfy Viking's subrogation interest. If she promised, Nelson can sue for breach of promise, and Clark will not be overcompensated because she is liable for breach. Alternately, if she did not promise to settle the subrogation interest, but instead settled only her own claim against Nelson, and she will not be overcompensated by keeping the entire settlement.

In conclusion, we find no reason to distinguish *Torres.* *Torres* precludes a culpable tortfeasor, who knows of the insurer's interest and its rejection of the settlement terms, from extinguishing a subrogation interest by settling with the injured party, albeit without exhausting the tortfeasor's assets. Taking all facts most favorably to Viking, its claim satisfies the three-part *Torres* test, and the trial court erred in granting summary judgment in favor of Nelson.

The remainder of this opinion will not be published

546

because it addresses assignments of error which have no precedential value. It will be filed for public record in accordance with the rules governing unpublished opinions. *See* RCW 2.06.040.

Reversed and remanded.

KENNEDY, A.C.J., and ELLINGTON, J., concur.