# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 33059

HOWARD R. FOLEY, )
)
    Petitioner-Appellant, )
)
v. )
)
JAMIE R. GRIGG, a/k/a JAMES R. GRIGG, )
SAFECO LIFE INSURANCE COMPANY, )
ROYAL INSURANCE COMPANY OF )
AMERICA, SETTLEMENT CAPITAL )
CORPORATION, ROBERT CHRIS, and )
PIONEER FEDERAL CREDIT UNION, )
)
    Defendants-Respondents. )

Boise, May 2007 Term

2007 Opinion No. 95

Filed: June 29, 2007

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Honorable Kathryn A. Sticklen, District Judge.

District court decision assigning annuity payment, <u>reversed and remanded.</u>

Foley Freeman Borton, PLLC, Meridian, for appellant. Joseph Walden Borton argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent Settlement Capital Corporation. James L. Martin argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent Safeco Life Insurance Company.

Elam & Burke, Boise, for respondent Royal Insurance Company.

Ashcraft and Miller, PLLC, Mountain Home, for respondent Pioneer Federal Credit Union.

Richard L. Harris, Caldwell, for respondent Robert Chris.

---

BURDICK, Justice

Defendant James R. Grigg settled a wrongful death claim and received a structured settlement. Grigg then allegedly assigned his entire final annuity payment to both Appellant Howard R. Foley and Respondent Settlement Capital Corporation. The district court determined

that Settlement Capital Corporation was entitled to the annuity payment. Foley now appeals that decision. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 1984 Grigg's mother was killed in a car accident. Foley represented Grigg and his father in the wrongful death action. As part of the settlement of that case, Grigg received structured payments, funded through an annuity contract purchased from Safeco Life Insurance Company (Safeco) by Royal Insurance Company of America (Royal), the insurer of a defendant in the wrongful death case. The settlement called for a limited number of monthly payments and then two lump sum payments of $50,000 due May 1, 1995, and May 1, 2005. These payments were first to be paid to a conservator and then directly to Grigg when he became of legal age. The settlement was approved by the court and the order approving the settlement noted that Grigg was to receive seventy-five percent of the settlement, with twenty-five percent going toward litigation costs and expenses. In 1990, after Grigg reached the age of majority, the conservatorship was terminated by court order.

Sometime in the mid-1990's, Grigg began attempting to sell his May 2005 lump sum payment.[1] In September 1997 Grigg assigned the May 2005 lump sum payment of $50,000 to Foley for $10,000. Foley did not notify Safeco or Royal of this assignment, nor did he record notice of this assignment with the Secretary of State; however, at that time Foley had no statutory obligation to do so.[2] Then in February 2001 Grigg approached Settlement Capital Corporation (SCC) about selling his interest in the May 2005 payment. As part of the sale, and pursuant to the newly enacted provisions of I.C. § 28-9-109, SCC sought court approval of the

---

[1] The Memorandum Decision and Order notes that Grigg attempted to sell the payment to Canco Credit Union, and that the manager of Canco, Timothy Johnson, purchased Grigg's interest in the payment. Later, Johnson assigned this interest to Third Party Defendant Robert Chris. Chris then pledged this interest as collateral for a loan from Canco. Defendant Pioneer Federal Credit Union is the successor to Canco. However, according to the district court's findings, none of these parties have an interest in the annuity payment; moreover, none of them have appealed that decision. Therefore, since judgments not appealed from are final, *see, e.g., Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 94, 29 P.3d 401, 405 (2001), we will determine the rights to the annuity payment as between the parties to this appeal.

[2] The parties recognize that the Structured Settlement Protection Act was not enacted until after Grigg's assignment to Foley.

transfer of payment. SCC gave notice of this action to Grigg, Royal and Safeco.[3] The court approved the transfer.

Apparently because the notice of SCC's petition was sent to Grigg in care of Foley, Foley notified Safeco, in January 2002, of his 1997 assignment from Grigg. In 2003 Foley sought a declaratory judgment, and in early 2005 the parties settled the suit with Foley and SCC agreeing to share the payment. Based on this settlement, the court entered judgment. However, shortly before the 2005 payment, Safeco received a letter from another party indicating that this party was entitled to the payment. Safeco immediately moved for relief from the prior judgment, and the court granted that motion. The case was then set for a court trial. However, the parties agreed that the district court could determine who was entitled to the 2005 payment based on the record.

The district court then entered its memorandum decision and order finding SCC was entitled to the entire $50,000 lump sum payment. Foley appeals from this decision.

## II. STANDARD OF REVIEW

"Review of the trial court's decision is limited to ascertaining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Roell v. Boise City*, 134 Idaho 214, 216, 999 P.2d 251, 253 (2000). "[T]his Court exercises free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found." *Id.*

---

[3] Between the time Grigg allegedly assigned Foley his rights in the settlement and the time Grigg sold his rights to SCC, our legislature adopted Idaho Code § 28-9-109(d)(13)(B)(v), regulating the transfer of structured settlement payments. This subsection provides, in pertinent part:

> Procedure for approval of transfers
>
> . . .
>
> 2. Not less than twenty (20) days prior to the scheduled hearing on any application for approval of a transfer of structured settlement payment rights under paragraph (B)(iii) of this subsection, the transferee shall file with the court and serve on all interested parties a notice of the proposed transfer and the application for its authorization, including with such notice[.]

I.C. § 28-9-109(d)(13)(B)(v)(2). "With respect to any structured settlement," interested party is defined as "the payee, any beneficiary irrevocably designated under the annuity contract to receive payments following the payee's death, the annuity issuer, the structured settlement obligor, and any other party that has continuing rights or obligations under such structured settlement[.]" I.C. § 28-9-109(d)(13)(B)(i)(6).

The interpretation of a statute is a question of law over which this Court exercises free review. *Carrier v. Lake Pend Oreille School Dist. # 84*, 142 Idaho 804, 807, 134 P.3d 655, 658 (2006).

## III. ANALYSIS

This Court first must determine whether the district court erred when it awarded SCC the entire lump sum payment, and then must determine whether SCC is entitled to attorney fees on appeal.

### A. Annuity Payment

Foley maintains that SCC did not acquire a right to the final annuity payment; he argues that he is an interested party pursuant to I.C. § 28-9-109(d)(13)(B)(i)(6) because he had continuing rights and obligations under the settlement and that SCC failed to give him the required statutory notice when it petitioned the court to approve the transfer of Grigg's settlement. As such, Foley concludes, his due process rights have been violated and the district court should not have recognized the transfer and instead determined that he was entitled to the full $50,000. SCC argues that Foley had no interest under the annuity contract because the contract provided that Safeco would not be bound by an assignment until Safeco had received notice of the assignment and Foley did not give Safeco notice; therefore, SCC maintains, Foley was not an interested party and was due no notice.

However, the parties have incorrectly identified the issue before the Court as whether Foley could be identified as an interested party at the time SCC petitioned the court to approve the transfer of Grigg's settlement. Rather, the issue for this Court to determine is whether SCC had any right to the annuity payment because of Grigg's prior assignment of it to Foley.[4] If SCC had no right to the annuity payment, then notice or lack thereof to Foley is irrelevant, as Foley's due process rights would be violated by the award of the lump sum payment to SCC.[5]

---

[4] It is very clear that the Structured Settlement Protection Act does not affect transfer agreements reached prior to its enactment. *See* I.C. §§ 28-9-109(d)(13)(B)(vi)(5); 28-9-109(d)(13)(B)(vii). Therefore the Structured Settlement Protection Act cannot work to cut off the rights of previous assignees, such as Foley.

[5] Nonetheless, SCC's notice in its petition to transfer did not meet the statutory requirements of I.C. § 28-9-109(d)(13)(B)(v)(2). SCC argues that in its due diligence it did not discover that Foley had an interest in the settlement payment. However, the purpose behind this provision is to protect the payee from unscrupulous practices by requiring court approval of structured settlement transfers. *See* Daniel W. Hindert and Craig H. Ulman, *Transfers of Structured Settlement Payment Rights: What Judges Should Know About Structured Settlement Protection Acts*, 44 Judges J. 19, 19 (Spring 2005). If a transferee can claim that it need not provide notice to any

4

An assignment is a transfer of rights or property from one person to another. *Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 140 Idaho 121, 125, 90 P.3d 346, 350 (2004) (quoting Black's Law Dictionary 115 (7th ed. 1999); 6 Am. Jur. 2d Assignment § 1 (1999)). An assignment "confers a complete and present right in the subject matter to the assignee." *Id.* (quoting 6 Am. Jur. 2d Assignment § 1 (1999)). "[A]n assignee takes the subject of the assignment with *all the rights* and remedies possessed by and available to the assignor." 6 Am. Jur. 2d Assignment § 144 (1999) (emphasis added). Once an assignor makes an assignment, he no longer retains control of the subject of the assignment. *See First State Bank of Eldorado v. Rowe*, 142 Idaho 608, 612, 130 P.3d 1146, 1150 (2006).

Here, the district court determined that Grigg had assigned the $50,000 payment to Foley.[6] Therefore, as a matter of law, Foley had all the property rights to the payment, and Grigg no longer had control over or any rights to the payment. As such, Grigg retained nothing to assign to SCC, and his "assignment" to SCC transferred nothing to SCC. Instead, Foley had all the property rights to the payment and all the rights to control the payment.

Moreover, the order in which Safeco received notice—from SCC and then from Foley— is irrelevant to the determination of this case. Although SCC argues that Foley failed in his duty to give Safeco notice as required by the annuity contract, the requirement that Safeco receive notice before being bound by an assignment serves a bookkeeping function and protects Safeco only. *See* I.C. § 28-9-318 (1979) (currently codified at I.C. § 28-9-406 (2001)). This provision in the annuity contract does not create a race-notice situation, and it cannot operate to determine the rights between Grigg and Foley. Rather, contract law operates to determine the right to the assignment. Therefore, the district court erred when it awarded SCC the entire $50,000 payment.

---

interested party it does not know about, it encourages less diligence on the transferee's part and could possibly leave an unsophisticated payee subject to legal action from a "jilted" claimant. *Id.* at 27.

Here, Foley had an assignment of the payment; therefore, as he had a continuing right to payment under the contract, and he was an interested party pursuant to I.C. § 28-9-109(d)(13)(B)(i)(6). Idaho Code § 28-9-109(d)(13)(B)(v) requires SCC to "file with the court and serve on all interested parties a notice of the proposed transfer and the application for its authorization" at least 20 days before the hearing. Since Foley is an interested party, SCC had a mandatory duty to provide him with notice of its petition to transfer.

[6] The parties do not dispute that the district court's factual findings are correct. Furthermore, there is ample unambiguous evidence in the record to support that Grigg assigned the payment to Foley, rather than taking it as collateral for a loan.

**B. Attorney Fees**

SCC requests attorney fees pursuant to I.C. § 12-121. This statute authorizes the award of attorney's fees to the prevailing party. *Schneider v. Howe*, 142 Idaho 767, 775, 133 P.3d 1232, 1240 (2006). Since we reverse the decision below, SCC is not a prevailing party and is not entitled to an award of attorney fees.

## IV. CONCLUSION

We reverse the decision of the district court because Grigg had no rights left in the payment to assign to SCC. We decline to award SCC attorney fees. Costs to Appellant.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES, **CONCUR.**