IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| VIRGINIA E. BURNETT, | ) | No. 32177-1-III |
| Appellant, | ) | |
| v. | ) | |
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS, | ) | PUBLISHED OPINION |
| Respondent, | ) | |
| JOHN DOE GUARD, | ) | |
| Defendant. | ) | |

FEARING, J. — Pending before us are three motions: (1) the Washington State Department of Labor & Industries' (DLI's) motion to remove attorney Tom Scribner from representing it, (2) Virginia Burnett's motion to disqualify the Washington State Attorney General's Office from representing DLI and her, and (3) DLI's motion to dismiss this appeal. We deny DLI's motion to remove counsel Tom Scribner as moot. We deny Virginia Burnett's motion to disqualify the Attorney General's Office. Last, we

grant DLI's motion to dismiss the appeal. Therefore, we do not reach the merits of this appeal.

## FACTS

This appeal began as a challenge to the superior court's ruling that DLI, subrogee to the rights of Virginia Burnett, cannot recover on a worker compensation third party claim against the Washington State Department of Corrections (DOC) because Burnett worked in the same employ as the DOC worker who injured Burnett. Burnett, an instructor at Walla Walla Community College (WWCC or the College), sustained injuries in the course of employment with WWCC when she taught a class at the Washington State Penitentiary operated by DOC. Both WWCC and DOC are arms of state government. As Burnett walked through a metal door of the penitentiary, an eager guard closed the door on her.

DOC operates twelve prison facilities including eight major prisons and four minimum-security prisons. The Washington State Penitentiary, opened in 1887 before statehood, is a DOC men's prison located in Walla Walla. With an operating capacity of 2,200, it is the second largest prison in the state.

Like most states, the state of Washington operates a system of community and technical colleges to offer an open door to every citizen, regardless of his or her academic background or experience, at a cost normally within his or her economic means. RCW 28B.50.020. The State Board of Community and Technical Colleges (the Board) administers the community colleges. RCW 28B.50.020. The state system consists of 34

2

public, two-year institutions of higher education which specialize in vocational, technical, worker retraining, and university transfer programs. The state of Washington is divided into 30 community college districts with District 20 encompassing the counties of Asotin, Columbia, Garfield and Walla Walla. RCW 28B.50.040.

WWCC serves District 20. The principal WWCC campus lies east of the city of Walla Walla. The college also operates a branch campus in Clarkston, 100 miles to the east, and a teaching facility at the Washington State Penitentiary. The college has an average annual enrollment of about 9,000 students.

Research and experience show that providing education and vocational training to criminal offenders reduces recidivism. As part of its mission to rehabilitate offenders, DOC strives to provide every inmate with basic academic skills as well as educational and vocational training designed to meet the assessed needs of the offender. RCW 72.09.460. The legislature authorized correction facilities to implement postsecondary education programs with accredited community colleges. RCW 72.09.465.

DOC and the Board collaborate to provide higher education to those incarcerated in the state prison system, including the receipt of education from WWCC for prisoners confined to the Washington State Penitentiary. DOC and the Board could have, but did not, established a separate legal entity to conduct the joint undertaking. RCW 39.34.030(4). Pursuant to the Interlocal Cooperation Act, chapter 39.34 RCW, the two entities yearly enter an interagency agreement that governs this collaboration. The relevant agreement imposed on the Board the duty to hire teachers and instructors and on

3

DOC the duty to pay for instruction services. Section 3.1 of the agreement obligated the Board to hire 4,330 full time instructors and DOC to pay the Board up to $18,230,000 for instructional services. Sections 5.5 of the interagency agreement established the continued independence of DOC and community colleges. The paragraph reads:

> 5.5 INDEPENDENT CAPACITY: The employees or agents of each party who are engaged in the performance of this Agreement shall continue to be employees or agents of that party and *shall not be considered for any purpose to be employees or agents of the other party.*

Clerk's Papers (CP) at 68 (emphasis added).

WWCC hired Virginia Burnett as a basic skills instructor at the WWCC penitentiary campus. The College and Burnett signed a professional personnel contract. Virginia Burnett's 2009 W-2 identified her employer as "Walla Walla Community College." CP at 56.

On March 9, 2009, Virginia Burnett went to the Washington State Penitentiary to teach a class. As she walked through a metal door, a prison guard closed the door. The door crushed Burnett's shoulders and upper torso. Burnett sustained an industrial injury for which DLI paid worker compensation benefits.

## PROCEDURE

RCW 51.24.030(1), a section of the Industrial Insurance Act, Title 51 RCW, authorizes actions against third person tortfeasors, such as DOC and its guard, for one who recovers worker compensation. The statute reads:

> If a third person, *not in a worker's same employ*, is or may become liable to pay damages on account of a worker's injury for which benefits

4

and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person.

(Emphasis added.) If the injured worker elects to bring suit against a third party tortfeasor, the worker must give notice to DLI. RCW 51.24.030(2). DLI may file a notice of statutory interest in the recovery. RCW 51.24.030(2).

In the event the injured worker fails to give notice of election to DLI, DLI may demand, by a certified letter, that the worker elect whether or not to pursue a claim against the third party tortfeasor. RCW 51.24.070. If the employee fails to elect to pursue a claim, DLI may take assignment of the tort claim and bring action against the tortfeasor. RCW 51.24.050(1). Any recovery obtained by DLI is distributed as follows:

> (a) The department . . . shall be paid the expenses incurred in making the recovery including reasonable costs of legal services;
> (b) The injured worker . . . shall be paid twenty-five percent of the balance of the recovery made . . . PROVIDED, That in the event of a compromise and settlement by the parties, the injured worker . . . may agree to a sum less than twenty-five percent;
> (c) The department . . . shall be paid the compensation and benefits paid to or on behalf of the injured worker . . . by the department . . . ; and
> (d) The injured worker . . . shall be paid any remaining balance.

RCW 51.24.050(4).

Virginia Burnett never notified DLI that she intended to pursue a claim against DOC or its employee who prematurely closed the prison door. On May 19, 2009, DLI sent a certified letter to Burnett. The letter demanded that Burnett elect whether or not to pursue a claim against DOC and its employee. Burnett signed the mail received receipt. Burnett did not respond to the letter.

5

On August 6, 2009, DLI wrote Virginia Burnett again and informed her that she had assigned her third party claim to DLI and DLI would pursue the claim against DOC and the guard. DLI contracted with Walla Walla attorney Tom Scribner to file suit against DOC. On March 1, 2012, Scribner filed the suit, in Walla Walla Superior Court, under the name of Virginia Burnett against DOC and "John Doe Guard" for negligence under RCW 51.24.030(1). CP at 1-2.

An assistant attorney general appeared in the lawsuit and defended DOC. The superior court granted DOC's motion for summary judgment. The superior court reasoned that WWCC and DOC are branches of the same entity, and thus the DOC guard and Virginia Burnett were employed by the same employer. DLI, under the name of Virginia Burnett, appealed to this court. The issue on appeal was whether Burnett and the DOC guard were in the same employ within the meaning of RCW 51.24.030 such that the statute barred the suit.

In December, this court reviewed the appeal without oral argument. After conference, we sent to counsel, pursuant to RAP 12.1(b), a list of questions to answer. The questions surrounded whether each branch of state government separately paid premiums to DLI to cover its respective employees. We directed the parties to answer the questions by January 7, 2015.

On January 2, 2015, Tom Scribner, on behalf of Virginia Burnett and DLI, filed a motion for extension of time to answer the questions. On January 5, DOC, through Assistant Attorney General Jason Brown, also requested an extension of time to answer

6

the questions. On January 5, Assistant Attorney General Anastasia Sandstrom appeared on behalf of DLI. Sandstrom also filed, on behalf of DLI, a motion to dismiss the appeal. Because of the motion to dismiss, we held in abeyance the motion to extend time to answer the panel's questions. DLI's motion to dismiss did not comply with our rules. We directed DLI to comply with the rules by providing legal argument in support of the motion to dismiss. DLI complied with this direction and also moved to disqualify Tom Scribner as counsel for DLI.

Tom Scribner withdrew from representation of Virginia Burnett and DLI. Walla Walla attorney Janelle Carman substituted for Scribner as attorney for Burnett. Assistant Attorney General Anastasia Sandstrom continues to represent DLI. Assistant Attorney General Jason Brown, on behalf of DOC, filed a joinder in the motion to dismiss the appeal. Carman, on behalf of Virginia Burnett, filed an objection to dismissal of the appeal and a motion to disqualify the Attorney General's Office from representing her and DLI based on a conflict.

## LAW AND ANALYSIS

*ISSUE 1: Whether the Washington State Attorney General's Office is disqualified by reason of a conflict of interest from representing DLI because the office also represents Virginia Burnett or the opposing party, DOC?*

*ANSWER 1: No. The assistant attorney general has not represented Burnett. Burnett has no standing to assert a conflict of interest between DLI and DOC.*

We first address the motion to disqualify filed by Virginia Burnett. Burnett's

7

motion to disqualify the Attorney General's Office has two facets. First, she claims that the Attorney General's Office cannot represent both DLI and her. Second, she argues that the Attorney General's Office cannot represent both DLI and DOC.

Virginia Burnett's motion implies that the Attorney General's Office represents DLI and her. This first argument fails because the Attorney General's Office has never claimed or sought to represent Burnett. The notice of appearance of Assistant Attorney General Anastasia Sandstrom is only on behalf of DLI. DLI sued under Virginia Burnett's name, but DLI has the right to use Burnett's name under RCW 51.24.050(1). DLI is a real party in interest. *Dep't of Labor & Indus. v. Wendt*, 47 Wn. App. 427, 431, 735 P.2d 1334 (1987), *overruled on other grounds by State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257 (1999). Burnett may also be a party in interest, but she is now represented separately by Janelle Carman.

Virginia Burnett also seeks to disqualify the Attorney General's Office from representing DLI because DLI's interests conflict with DOC's and DOC is already represented by the Attorney General's Office. The attorney general is a constitutionally recognized office that acts as the attorney for state officers. CONST. art. III, § 21. Numerous statutes implement this constitutional directive and charge the attorney general with representing state agencies in litigation. Under RCW 43.10.030:

> The attorney general shall:
> (1) Appear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested;
> (2) Institute and prosecute all actions and proceedings for, or for the use of the state, which may be necessary in the execution of the duties of

8

any state officer;

(3) Defend all actions and proceedings against any state officer or employee acting in his or her official capacity, in any of the courts of this state or the United States.

Under RCW 43.10.040:

The attorney general shall also represent the state and all officials, departments, boards, commissions and agencies of the state in the courts, and before all administrative tribunals or bodies of any nature, in all legal or quasi legal matters, hearings, or proceedings.

The Washington state attorney general is the legal adviser to DLI. RCW 51.52.140. The attorney general represents DLI in court litigation concerning worker compensation claims. *Aloha Lumber Corp. v. Dep't of Labor & Indus.*, 77 Wn.2d 763, 774, 466 P.2d 151 (1970). RCW 72.09.530 implies that the Attorney General's Office is the attorney for DOC. *See also McKee v. Dep't of Corr.*, 160 Wn. App. 437, 248 P.3d 115 (2011).

A private law firm would be precluded from representing competing interests in the same lawsuit, such as the interests held here by DLI and DOC. RPC 1.7(a)(1); RPC 1.10(a). Ethical rules and case law treat the State Attorney General's Office differently, however. To the extent that the attorney general is not a party to an action or personally interested in a private capacity, the attorney general may represent opposing state agencies in a dispute. *Reiter v. Wallgren*, 28 Wn.2d 872, 879-80, 184 P.2d 571 (1947); *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 773 (Tenn. Ct. App. 2001); 7 AM. JUR. 2D *Attorney General* § 20 (2007). A different assistant attorney general can and should be assigned to handle inconsistent

functions. *Wash. Med. Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 480, 663 P.2d 457 (1983).

We could, but do not, rest our decision on the motion to disqualify the Attorney General's Office on the basis that Washington law permits any conflict. We base denial of the motion on another ground. We hold Virginia Burnett lacks standing to assert the disqualification of the Attorney General's Office since any conflict of interest is between other parties.

Although no Washington decision has addressed standing needed to seek disqualification of counsel, the majority, if not universal, rule is that only a party who has been represented by the conflicted attorney has standing. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976); *Info. Sys. Assocs. v. Phuture World, Inc.*, 106 So. 3d 982, 984-85 (Fla. Dist. Ct. App. 2013); *Great Lakes Constr., Inc. v. Burman*, 186 Cal. App. 4th 1347, 1356, 114 Cal. Rptr. 3d 301 (2010); 7 AM. JUR. 2D *Attorneys at Law* § 188 (2007); *see generally* Eric C. Surette, Annotation, *Standing of Person, Other than Former Client, to Seek Disqualification of Attorney in Civil Action*, 72 A.L.R.6TH 563 (2012). The standing rule draws its strength from the logic of the rule itself, which is designed to protect the interests of those harmed by conflicting representations rather than serve as a weapon in the arsenal of a party opponent. *Mills v. Hausmann-McNally, SC*, 992 F. Supp. 2d 885, 891 (S.D. Ind. 2014). Since the Attorney General's Office has not represented Virginia Burnett, she lacks standing to forward her motion of disqualification.

The dissent wishes that the majority would not address the question of whether the Attorney General's Office should be disqualified and claims that our opinion on this question is dicta. We address this issue because Virginia Burnett filed a motion to disqualify the Attorney General's Office. We need to resolve the motion to disqualify in order to resolve DLI's motion to dismiss. If we disqualified the office, we would need to determine if the pleadings filed by the office, including the motion to dismiss, should be stricken.

*ISSUE 2: Must DLI demonstrate payment of Tom Scribner's bill before it may substitute other counsel?*

*ANSWER: No. Virginia Burnett does not hold standing to assert the pecuniary interest of an attorney.*

Virginia Burnett additionally argues that this court should not entertain a motion to dismiss because the Attorney General's Office has not properly appeared for DLI and thus any motion filed by the Attorney General's Office on behalf of the appellant is invalid. Burnett claims that, under RCW 2.44.040, DLI must first provide proof that DLI paid Tom Scribner's attorney fees.

RCW 2.44.040 reads:

> The attorney in an action . . . may be changed at any time before judgment or final determination as follows:
> (1) Upon his or her own consent, filed with the clerk or entered upon the minutes; or
> (2) Upon the order of the court, or a judge thereof, on the application of the client, or for other sufficient cause; but no such change can be made

11

until the charges of such attorney have been paid by the party asking such change to be made.

The structure of the statute creates an ambiguity. The reader is uncertain as to whether the last clause requiring payment of the attorney extends to both subsection (1) and (2) of the statute. Stated differently, the statute could be read to require evidence of payment only when the withdrawal occurs by court order or the statute could be read to demand proof of payment even if the attorney withdraws by consent. Noted veteran attorney Tom Scribner voluntarily withdrew when he received differing instructions from his clients.

We choose not to construe the statute, but rather hold that Virginia Burnett lacks standing to assert the dictates of RCW 2.44.040. We applaud Burnett's desire to protect the pecuniary interests of an attorney, but the attorney should assert any right to payment. One lacks standing to assert an argument, when one has no proprietary, personal, or pecuniary rights at stake. *Aguirre v. AT&T Wireless Servs.*, 109 Wn. App. 80, 85, 33 P.3d 1110 (2001); *In re Estate of Wood*, 88 Wn. App. 973, 976, 947 P.2d 782 (1997).

*ISSUE 3: Does DLI hold the prerogative to seek dismissal of the appeal without approval of Virginia Burnett?*

*ANSWER 3: Yes.*

Virginia Burnett next argues that she has an interest in the appeal and this lawsuit since she may have a reasonable expectation of receiving some of the recovery. Accordingly, she contends that DLI lacks the statutory authority to dismiss the appeal in contravention to her wishes and to her detriment. She maintains that allowing DLI to

assume an action for the benefit of the individual and control both ends of the controversy creates an inherent conflict to the detriment of the worker and is therefore violative of public policy. We reject Virginia Burnett's arguments because Washington statutes demand a contrary outcome. Those same statutes afforded Burnett the opportunity to control this litigation and this appeal, but Burnett neglected to assert those rights.

We recognize that Virginia Burnett is a real party in interest to this dispute. She could recover some of any recovery against DOC. Nevertheless, DLI is also a real party in interest and DLI gained the right to control the litigation, including the right to dismiss the suit, when Burnett assigned her rights to the third party claim to DLI.

Because Virginia Burnett assigned her third party claim to DLI, DLI is the real party in interest as taught in *Department of Labor and Industries v. Wendt*, 47 Wn. App. 427, 735 P.2d 1334 (1987), *overruled on other grounds by State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257 (1999). Victor Wendt assaulted Roger Heinrich in the course of the latter's employment. Heinrich, a Seventh-day Adventist minister, refused to pursue any claim against Wendt for religious reasons and thereby assigned his cause of action to DLI who had paid Heinrich worker compensation benefits. DLI filed the lawsuit under the name of Heinrich, but amended the caption, at the request of Heinrich, to name the department as the plaintiff. On appeal, Wendt argued that DLI could not pursue the action in its own name. This court disagreed. We held that, pursuant to RCW 51.24.050, DLI could proceed, as the assignee, under its own name. DLI was the real

13

party in interest by reason of the assignment. The case does not necessarily preclude the employee from also being a real party in interest, however.

According to one line of cases, the real party in interest is the person who possesses the right sought to be enforced. *Peyton Bldg., LLC v. Niko's Gourmet, Inc.*, 180 Wn. App. 674, 680, 323 P.3d 629 (2014); *Riverview Cmty. Grp. v. Spencer & Livingston*, 173 Wn. App. 568, 576, 295 P.3d 258 (2013), *rev'd on other grounds*, 181 Wn.2d 888, 337 P.3d 1076 (2014); Philip A. Trautman, *Joinder of Claims and Parties in Washington*, 14 GONZ. L. REV. 103, 109 (1978). Under another line of decisions, the real party in interest is the person who, if successful, will be entitled to the fruits of the action. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 716, 899 P.2d 6 (1995). General doctrine recognizes that there may be more than one real party in interest. *Nw. Indep. Forest Mfrs.*, 78 Wn. App. at 716; 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 17, at 420 (6th ed. 2013). Virginia Burnett may be a real party in interest with DLI, but drawing this conclusion does not resolve whether DLI must obtain Burnett's approval to dismiss the appeal.

RCW 51.24.050(1) and RCW 51.24.070 control the question of whether DLI possesses the right to dismiss the appeal without Virginia Burnett's approval. The first statute reads:

> (1) An election not to proceed against the third person operates as an *assignment of the cause of action* to the department or self-insurer, which may prosecute or *compromise the action in its discretion in the name of the injured worker,* beneficiary or legal representative.

14

(Emphasis added.) RCW 51.24.070 reads, in relevant part:

(1) The department . . . may require the injured worker or beneficiary to exercise the right of election under this chapter by serving a written demand by registered mail, certified mail, or personal service on the worker or beneficiary.

(2) Unless an election is made within sixty days of the receipt of the demand, and unless an action is instituted or settled within the time granted by the department . . ., the injured worker or beneficiary is deemed to have assigned the action to the department . . . .

. . . .

(4) If the department . . . has taken an assignment of the third party cause of action under subsection (2) of this section, the injured worker or beneficiary may, at the discretion of the department or self-insurer, exercise a right of reelection and assume the cause of action subject to reimbursement of litigation expenses incurred by the department or self-insurer.

Under RCW 51.24.070, Virginia Burnett could have protected her rights to recover by notifying the department of an election to pursue the suit. Even today, she could ask the department to permit her to exercise a right of reelection. She has not requested reelection.

In *Duskin v. Carlson*, 136 Wn.2d 550, 965 P.2d 611 (1998), our Supreme Court precluded the injured worker from pursuing a third party claim against the tortfeasor, when the worker failed to respond to a letter from DLI demanding that he give notice if he elected to pursue the claim. Because of the lack of a response, DLI settled the claim with the tortfeasor's liability insurance carrier. The Supreme Court has also held that DLI owns sole discretion in determining whether to compromise its right to reimbursement of worker compensation benefits. *Hadley v. Dep't of Labor & Indus.*, 116 Wn.2d 897, 903, 814 P.2d 666 (1991).

15

RCW 51.24.050(1) grants DLI the right to "compromise" the third party claim and omits any reference to any veto power in the injured worker. No Washington decision addresses the meaning of "compromise" in the context of this statute. Virginia Burnett argues that the term does not extend to dismissing the suit without recovery. She contends that, as a matter of public policy, DLI has a duty to ensure that Burnett's interests are pursued diligently. Accordingly, DLI can settle but not dismiss the case.

Virginia Burnett's contention disregards logic. Burnett advocates holding DLI to a duty of good faith when compromising a claim assigned to it. We would be reading additional language into the statute if we reached this conclusion. Without a duty of good faith, presumably DLI could settle for $1,000 or even $1. These hypotheticals suggest the right to compromise includes the right to dismiss.

Decisions hold, in other contexts, that an assignee of a chose in action assumes all rights of the assignor, which rights should include the right to dismiss the chose without consent of the assignor. An assignee of a chose in action takes those rights coextensive with those of the assignor at the time of the assignment. *Home Indem. Co. v. McClellan Motors, Inc.*, 77 Wn.2d 1, 3-4, 459 P.2d 389 (1969); *Steinmetz v. Hall-Conway-Jackson, Inc.*, 49 Wn. App. 223, 227, 741 P.2d 1054 (1987). Burnett argues that these Washington decisions lie in another context, but Burnett cites no decisions to support her contrary position.

Other jurisdictions recognize that an assignment transfers all rights to the property assigned. As a general rule, an assignee stands in the shoes of the assignor and succeeds

16

to all the rights and remedies of the latter. *City of Cincinnati ex rel. Ritter v. Cincinnati Reds, LLC*, 150 Ohio App. 3d 728, 2002-Ohio-7078, 782 N.E.2d 1225, 1234. Once an assignor makes an assignment, he or she no longer retains control of the assigned claim. *Foley v. Grigg*, 144 Idaho 530, 164 P.3d 810, 813 (2007).

The dissent writes that Virginia Burnett had no option but to assign her rights to DLI in order to gain worker compensation benefits. The law reads to the contrary. Under RCW 51.24.030(2), Burnett could have elected to bring suit against DOC and retain control of the lawsuit. She failed to exercise this option.

The dissent would rule in favor of Virginia Burnett by holding that the DOC guard was not in the "same employ" of Burnett for purposes of the worker compensation statute, RCW 51.24.030(1). No Washington decision addresses this question. The overwhelming rule, if not universal rule, from other jurisdictions is that employees of separate state agencies are within the same employment, and an injured worker employed by one agency may not bring a third party complaint for negligence against an employee of another state agency. *Singhas v. N.M. State Highway Dep't*, 1997-NMSC-054, 124 N.M. 42, 946 P.2d 645; *Rodriguez v. Bd. of Dirs. of Auraria Higher Educ. Ctr.*, 917 P.2d 358 (Colo. App. 1996); *Colombo v. State*, 3 Cal. App. 4th 594, 5 Cal. Rptr. 2d 567 (1991); *Linden v. Solomacha*, 232 N.J. Super. 29, 556 A.2d 346 (1989); *Egeland v. State*, 408 N.W.2d 848 (Minn. 1987); *State v. Coffman*, 446 N.E.2d 611 (Ind. Ct. App. 1983); *Wright v. Moore*, 380 So. 2d 172 (La. Ct. App. 1979); *Osborne v. Commonwealth*, 353 S.W.2d 373 (Ky. 1962).

17

A similar rule controls when an employee of one branch of local government sues an employee of another branch of local government for a work injury. *Jones v. Kaiser Indus. Corp.*, 43 Cal. 3d 552, 737 P.2d 771, 237 Cal. Rptr. 568 (1987); *Pulliam v. Richmond County Bd. of Comm'rs*, 184 Ga. App. 403, 361 S.E.2d 544 (1987); *Holt v. City of Boston*, 24 Mass. App. Ct. 175, 507 N.E.2d 766 (1987); *Holody v. City of Detroit*, 117 Mich. App. 76, 323 N.W.2d 599 (1982); *Berger v. U.G.I. Corp.*, 285 Pa. Super. 374, 427 A.2d 1161 (1981); *Walker v. City of San Francisco*, 97 Cal. App. 2d 901, 219 P.2d 487 (1950); *De Giuseppe v. City of New York*, 188 Misc. 897, 66 N.Y.S.2d 866 (Sup. Ct. 1946), *aff'd*, 273 A.D. 1010, 79 N.Y.S.2d 163 (1948); *Bross v. City of Detroit*, 262 Mich. 447, 247 N.W. 714 (1933). In *Thompson v. Lewis County*, 92 Wn.2d 204, 595 P.2d 541 (1979), the Washington high court held that an employee of the county road department who was injured while driving a county truck in the course of his employment on a county road could not maintain an action against the county. The employee was limited to his rights under the worker compensation act, despite his claim that the county was serving in a dual capacity as both his employer and as a governmental agency with the duty to properly construct and maintain county roads for the use and benefit of the public.

The dissent cryptically writes that "due process includes the right to appeal." Dissent at 2. Although we have no quarrel with this proposition, the dissent cites no authority for the proposition and fails to analyze whether anyone's due process rights are violated. Virginia Burnett was given notice and an opportunity to control this litigation,

18

including control over any appeal, but she forewent that right. She does not argue that her assignment to DLI denied her due process.

The dissent laments that the majority engages in fact-finding, and it desires to remand the case on undeveloped issues, such as intent, waiver, notice, and disclosure. Dissent at 4. Nevertheless, the motion to dismiss does not raise any issue of waiver. No party asserts an issue of waiver. The only issue before the court on the motion to dismiss is assignment. The DLI, by unrefuted declaration, establishes that it sent notice to Virginia Burnett that she needed to assert her rights or else she assigned her third party claim to DLI. Burnett failed to assert her rights. Burnett avers no facts to the contrary. She does not contend she lacked notice or there was a failure to disclose. Fact-finding implies a need to resolve disputes of facts. Burnett has raised no issue of fact requiring an evidentiary hearing. If Burnett raised an issue of fact, we would not hesitate to remand to the trial court.

*ISSUE 4: Should this court dismiss the appeal?*

*ANSWER 4: Yes.*

DLI's motion to dismiss was filed after our judicial conference. RAP 18.2 grants us discretion whether to grant the motion under these circumstances. Stated differently, even if we agree that DLI holds the prerogative to dismiss the appeal, we could deny the motion and address the merits of the appeal.

We exercise our discretion in favor of granting the motion for several reasons. First, even if we were to issue an opinion and reverse the trial court, DLI could

19

voluntarily dismiss the lawsuit on remand to the superior court. CR 41(a)(1)(B). Thus, any decision on the merits would likely lack any practical import. Although we can issue an opinion in a moot case, we generally avoid issuing a decision that lacks an impact on the parties.

RAP 18.2 allows only a "party who has filed a notice of appeal" to file a motion to dismiss. One might argue that Virginia Burnett was the only party who filed the appeal, since DLI was not mentioned as the appellant on the notice of appeal. Burnett does not raise this argument. We would reject such an argument since RCW 51.24.050(1) and case law consider DLI to be the real party in interest.

The dissent wishes this court to ignore a motion to dismiss brought by the party who controls the appeal even though the motion is unopposed by the responding party, in order to rule in favor of a party who assigned her rights to the control of the litigation on a question on which other jurisdictions have ruled against that party. Then the dissent wishes this court, after ruling in favor of a party, to remand this case to the trial court to resolve facts that are undisputed and to address four irrelevant issues not raised by the parties.

The dissent may be troubled because of DLI's wasting of attorneys' and courts' time and resources by pursuing this case and then abandoning the case shortly before the issuance of this court's opinion. We concur in the dissent's umbrage.

## CONCLUSION

We deny Virginia Burnett's motion to disqualify the State of Washington Attorney General's Office from representing DLI in this appeal. We grant DLI's motion to dismiss the appeal.

_____
Fearing, J.

I CONCUR:

_____
Korsmo, J.

No. 32177-1-III

BROWN, A.C.J. (dissenting) — Today, we fail to answer Virginia Burnett's sole assignment of error: Whether the trial court erred in summarily dismissing her negligence claim against the Department of Corrections (DOC) under the "same employ" provision of RCW 51.24.030(1). Ms. Burnett contends, and I agree, the prison guard causing her injuries and her were not in the "same employ" and therefore, the trial court erred. I would reach the merits and reverse, not dismiss. After all, Ms. Burnett had little or no choice in assigning her claim against DOC to the Department of Labor and Industries (DLI) in exchange for workers compensation benefits. Even so, she stood to statutorily share in any excess recovery over the benefits paid to her under RCW 51.24.050(4). DLI hired Tom Scribner to sue DOC in Ms. Burnett's name, giving her reason to believe her interests were being pursued at the same time as DLI's interests. Ms. Burnett's appeal is not moot. Dismissing her appeal now, without addressing the merits, unnecessarily and unfairly harms her and all workers similarly situated who seek a recovery in excess of DLI's subrogation interest.

Complicating this appeal is our process. Instead of deciding this appeal in December 2014 without argument, inquiries were later sent to appellate counsel calling for supplemental briefing. Our intrusion, at least in hind-sight, likely exposed possible

tactical and strategic problems about DLI's wisdom of pitting one state department against another and then appealing to reinstate a claim for which the State, the sovereign of both executive departments, could become liable on an excess judgment. The original briefing was silent on these topics. Unsurprisingly, motions began to fly, including those the majority describes. Mr. Scribner withdrew; Ms. Burnett's private attorney appeared, and finally, an attorney general appeared for DLI and asked us to dismiss this appeal. Of course, DOC joined that motion. But due process includes the right to appeal.

Ms. Burnett fairly argues, in essence, the State is now the wolf guarding the henhouse because it too has an interest in the outcome. Sovereign immunity does not exist. Thus, she essentially asks, if DLI wants to abandon her and its acknowledged subrogation interest in this summary judgment appeal, why not let her pursue her claim on her own with her own counsel? I tend to agree with her. I reason DLI by seeking dismissal under these circumstances has acted against workers' compensation principles and unfairly impaired Ms. Burnett's statutory right to share an excess recovery for her injuries. DLI improperly uses the assignment to shield the State, striking against her interests instead of advancing them. Misled by DLI, the majority dismisses this appeal and incorrectly reasons the assigned error is thus moot. I disagree with the majority approach for three reasons.

2

First, I would hold: (1) Walla Walla Community College employed Ms. Burnett as a "worker" under the Industrial Insurance Act, *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979); (2) The "dual capacity doctrine" does not operate to preclude DLI's suit, *see* 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE SERIES: TORT LAW AND PRACTICE, § 12:11, at 489 (4th ed. 2013); and (3) under RCW 51.24.030(1), Ms. Burnett was not in the "same employ" as the DOC guard.

While no Washington case addresses whether employees of a state agency are deemed state employees for workers' compensation purposes, three cases seem most important to the majority, *Singhas v. N.M. State Highway Dep't*, 1997-NMSC-054, 124 N.M. 42, 946 P.2d 645 (1997); *Colombo v. State*, 3 Cal. App. 4th 594, 5 Cal. Rptr. 2d 567 (1991); and *Rodriguez v. Bd. of Dirs. of Auraria Higher Educ. Ctr.*, 917 P.2d 358 (Colo. App. 1996). These cases offer little guidance. The facts and statutory schemes are distinct from our appeal. In *Singhas*, the court gave effect to New Mexico legislative intent, but Washington has no statute or definition on point. 946 P.2d at 646. In *Colombo*, both the employer and the defendant were branches of one larger state agency. 3 Cal. App. 4th at 595-96. And, unlike in *Rodriquez*, no evidence here shows one industrial insurance policy covers all state employees, or any judgment would be paid out of the same account as premiums for that policy. 917 P.2d at 358-59. Here,

3

we should interpret RCW 51.24.030(1) solely within the holistic statutory context of Title 51 RCW.

Even if dismissal is an option, I would reach the merits and hold our issue is not moot because it is a matter of public interest, an authoritive decision is desirable to guide public officers, and the issue is likely to reoccur. *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). Dismissing eviscerates Ms. Burnett's right to appeal, and harms her and those who may follow her. The State's pecuniary interests should not be elevated over the holistic design of our workers' compensation scheme.

Second, considering all motions, no opinion should be issued dismissing this appeal merely because we have discretion to write an opinion, especially if doing so causes unnecessary harm. Exercising discretion on unreasonable or untenable grounds and applying inapplicable law to presumed facts outside our record is an abuse of discretion. *Teter v. Deck*, 174 Wn.2d 207, 222, 274 P.3d 336 (2012). Better would have been to stay this appeal by Chief's order and remand to the trial court with leave and direction to make any required fact-finding and rulings on the motions and get us a properly developed record with resolved facts on matters including intent, waiver, notice, and disclosure. We are not a fact-finding court; it is incorrect to presume no material facts remain on undeveloped collateral issues. Best is for us to decide the merits of the presented appeal and allow litigation of new issues at the trial court.

4

Third, I do not agree with opining on self-generated, collateral issues concerning the disqualification of the attorney general, alleged conflicts of interest, an attorney's pecuniary interests, Ms. Burnett's attorney-client relationships, and her standing to defend herself on these collateral matters. And, extensively opining on the merits while specifically not reaching or deciding the merits is at least dicta, and at worst advisory. *See Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 122, 231 P.3d 219 (2010) (noting appellate courts do not give advisory opinions).

In conclusion, our workers' compensation laws should be interpreted to benefit the workers who must forego private causes of action against their employers in exchange for workers compensation. These laws were not designed to shield third parties, like DOC, who are not the injured party's employer. RCW 51.24.030(1). Because I would reach the merits and reverse without addressing collateral matters and allow litigation of new issues at the trial court, I respectfully dissent.

Brown, A.C.J.

5