
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| OKANOGAN COUNTY, | ) | |
| | ) | No. 36611-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VARIOUS PARCELS OF REAL | ) | UNPUBLISHED OPINION |
| PROPERTY, et al., | ) | |
| | ) | |
| Appellants. | ) | |

SIDDOWAY, J. — Wilmington Trust, National Association, as trustee for Newcastle Investment Trust 2014-MH1, appeals the denial of its motion for an order vacating Okanogan County's (the County) judgment of tax foreclosure insofar as it affects the investment trust's interest in a property in Brewster. We reverse the trial court's denial of the motion and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

In 1997, Washington Mutual loaned several members of the Covarrubias family $43,400 to purchase a mobile home. The loan was secured by a deed of trust (Deed of Trust) against the mobile home and the real property in Brewster on which the mobile home would be affixed (the Property). The Deed of Trust was recorded in Okanogan County.

Twenty years later, the County initiated the tax foreclosure proceeding below against a number of properties, including the Property. RCW 84.64.050(4) requires the following notice in such proceedings:

> Notice and summons must be served or notice given in a manner reasonably calculated to inform the owner or owners, and any person having a recorded interest in or lien of record upon the property, of the foreclosure action to appear within thirty days after service of such notice and defend such action or pay the amount due.

The statute goes on to identify two examples of sufficient notice:

> Either (a) personal service upon the owner or owners and any person having a recorded interest in or lien of record upon the property, or (b) publication once in a newspaper of general circulation, which is circulated in the area of the property and mailing of notice by certified mail to the owner or owners and any person having a recorded interest in or lien of record upon the property, or, if a mailing address is unavailable, personal service upon the occupant of the property, if any, is sufficient.

*Id.*

In its effort to satisfy the notice requirement, the County published a notice of the foreclosure proceeding in the *Okanogan Valley Gazette-Tribune* on September 14, 2017. It obtained a litigation guarantee from Fidelity National Title that disclosed Washington Mutual's recorded Deed of Trust and sent a copy of its notice and summons, certified mail, to Washington Mutual at the address provided in the litigation guarantee.

On September 21, 2017, the certified letter addressed to Washington Mutual was returned to the County marked "RETURN TO SENDER NO SUCH NUMBER

UNABLE TO FORWARD." Clerk's Papers (CP) at 69. Two weeks later, on October 5, the County physically posted notice of the tax sale at the Property.

The Property was sold at auction on December 8, 2017, for $21,000 to Christina and Edilberto Valdovinos.

Seven months later, on July 25, 2018, the County was contacted by a lawyer for Wilmington Trust who stated the County had sent Washington Mutual's notice of the tax foreclosure sale to the wrong address. The lawyer pointed out that Washington Mutual's address identified in the Deed of Trust was 1201 Third Avenue in Seattle, whereas the County's declaration of mailing said notice had been mailed to 201 Third Avenue, an address that did not exist.

After its lawyers confirmed that the County had no corrective declaration of mailing, Wilmington Trust promptly moved in the tax foreclosure proceeding for a show cause order. Claiming to be the successor to Washington Mutual's interest in the Deed of Trust, it sought an order to show cause why the County's judgment of foreclosure should not be declared void as to its Deed of Trust. It contended the County failed to give notice reasonably calculated to inform when it mailed the notice and summons to a nonexistent address and, when the mailing was returned, failed to follow up.

The superior court entered an order to show cause as requested. The County's response argued Wilmington Trust was not entitled to notice because its interest was not recorded. It argued that as to Washington Mutual, its posting was sufficient notice. It

allowed as how "Wilmington Trust is the successor to Chase/[Washington Mutual]'s interest in the Deed of Trust" and "probably has standing to seek redress for insufficient notice to Washington Mutual." CP at 19. It pointed out that Wilmington Trust's suggested remedy of declaring the sale void only as to the Deed of Trust had been rejected by Washington and federal courts, in favor of finding the sale of the property entirely void. CP at 21 (citing *Homeowners Sols., LLC v. Nguyen*, 148 Wn. App. 545, 551, 200 P.3d 743 (2009); *Rosholt v. Snohomish County*, 19 Wn. App. 300, 305, 575 P.2d 726 (1978)).

The Valdovinoses' response to the order to show cause argued in part that the court should dismiss Wilmington Trust's motion as a matter of law because it failed to demonstrate that Wilmington Trust had standing, which they equated with a failure to prove that Wilmington Trust was, in fact, the successor to Washington Mutual.

A court commissioner continued the matter to allow Wilmington Trust time to produce documents supporting its assertion that it had succeeded to Washington Mutual's interest in the Deed of Trust. The County then retreated from its earlier concession that Wilmington Trust apparently had standing and joined the Valdovinoses' argument that it did not.

To demonstrate its interest, Wilmington Trust submitted a declaration from Richard Franklin, who identified himself as an Assistant Vice President for Ditech Financial LLC, whom he represented services the loan secured by the Deed of Trust for

4

Wilmington Trust. He declared that Wilmington Trust held the original note secured by the Deed of Trust (Note). He declared he was "familiar with" Ditech's record keeping practices and procedures, Ditech's records were made from information transmitted by a person with knowledge about the events described in the records at or near the time of the event described, and the records were kept and relied on in the ordinary course of business. CP at 60. He attached what he asserted was a copy of the Note.

The court commissioner concluded that Mr. Franklin's declaration did not authenticate its attachment as a copy of the Note or establish that Wilmington Trust was the Note's current holder, and that the County satisfied the statutory notice requirements. Wilmington Trust moved for revision of the commissioner's order. The trial court affirmed the commissioner's findings of fact and conclusions with the exception of some of the language from one of the commissioner's findings.

Wilmington Trust appeals.

ANALYSIS

"[A] county's failure to comply with the statutory provisions prescribing the content and manner of notice in proceedings to collect delinquent property taxes deprives the court of jurisdiction over the tax foreclosure proceeding and renders void any foreclosure sale and tax deed issued." *In re King County for Foreclosure of Liens for Delinquent Real Prop. Taxes for Years 1985 Through 1988*, 117 Wn.2d 77, 84, 811 P.2d 945 (1991) (citing *Pierce County v. Evans*, 17 Wn. App. 201, 204, 563 P.2d 1263

5

(1977)). Among situations in which jurisdiction has been found lacking is the "'failure to give notice in compliance with the letter and spirit of statutory requirements.'" *Id.* (quoting *Evans*, 17 Wn. App. at 204).

Wilmington Trust argues that the trial court erred in misconceived rulings on standing and the adequacy of the County's notice. We begin with its ruling that Wilmington Trust lacked standing.

I.  THE TRIAL COURT ERRED BY TREATING A DISPUTE OF FACT OVER POSSESSION OF A MORTGAGE OBLIGATION AS AN ISSUE OF STANDING

"Lenders . . . have long been free to sell . . . secured debt, typically by selling the promissory note signed by the homeowner." *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 88, 285 P.3d 34 (2012). Under the Uniform Commercial Code, a person who is in possession of a promissory note endorsed in blank, i.e. one that does not specify the person to whom it is payable, is a "holder" of the note and is entitled to enforce it. *Terhune v. N. Cascade Tr. Servs., Inc.*, 9 Wn. App. 2d 708, 723, 446 P.3d 683 (2019) (citing RCW 62A.3-205(b)), *review denied*, No. 97879-4 (Wash. Mar. 4, 2020). "Washington courts have long recognized that the security instrument follows the note that it secures." *Deutsche Bank Nat. Tr. Co. v. Slotke*, 192 Wn. App. 166, 177, 367 P.3d 600 (2016). Since it was readily determinable that Washington Mutual had financially

failed and been merged into JPMorgan Chase in 2008, as alleged by Wilmington Trust's motion,[1] it was unsurprising that some other entity would be the holder of the Note.

In its motion seeking relief from the County's judgment of foreclosure, Wilmington Trust asserted that "[Washington Mutual Bank] merged with JPMorgan Chase Bank, N.A. . . . in 2008" and "Wilmington is the successor to Chase / [Washington Mutual]'s interest in the Deed of Trust." CP at 1-2. These allegations are sufficient to assert standing in an action foreclosing property in which Washington Mutual had a recorded deed of trust interest. *E.g.*, *Burnett v. Dep't of Corr.*, 187 Wn. App. 159, 173, 349 P.3d 42 (2015) (assignee can proceed with legal action in its own name).

This court has observed that it is the responsibility of a complainant "clearly to *allege* facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Friends of N. Spokane County Parks v. Spokane County*, 184 Wn. App. 105, 115, 336 P.3d 632 (2014) (emphasis added). In so stating, we quoted the United States Supreme Court's decision in *Warth v. Seldin*, 422 U.S. 490, 518, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975), in which it also characterized the standing question as "whether the plaintiff has *alleged* such a personal

---

[1] *See, e.g.*, *Failed Bank Information: Information for Washington Mutual Bank, Henderson, NV and Washington Mutual Bank, FSB, Park City, UT*, FED. DEPOSIT INS. CORP., https://www.fdic.gov/bank/individual/failed/wamu.html [https://perma.cc/VN4Z-3SXV].

7

stake in the outcome of the controversy" as to invoke the court's jurisdiction and justify the exercise of its remedial powers. *Id.* at 498 (emphasis added) (internal quotation marks omitted). As with other aspects of pleading, there is a difference between the legal sufficiency of a party's allegations to state a claim and whether facts support those allegations.

Here, the County and the Valdivinoses did not question whether Washington Mutual merged with JPMorgan Chase. They merely questioned whether Wilmington Trust *really is* the successor to Washington Mutual's and JPMorgan Chase's interest in the Deed of Trust. While they characterize it as a standing challenge, what they challenged was a factual issue, not the legal issue of whether Wilmington Trust alleged facts sufficient for standing.[2]

When a party contends that a CR 60 motion can be resolved on the basis of a material fact, the manner in which the trial court addresses that fact depends on whether the fact is disputed or undisputed. If affidavits demonstrate that there is no genuine issue of material fact, the court can find the fact summarily. If there is an issue of material fact, it needs to be resolved by a fact-finding hearing. *Brinkerhoff v. Campbell*, 99 Wn.

---

[2] The issue raised by Wilmington Trust's CR 60(b)(5) motion should not be confused with the burden of proof it will bear in any action it later brings under the "Deed of Trust Act," chapter 61.24 RCW. In that setting, Wilmington Trust will have an affirmative burden to provide evidence that it is the holder of the Note, whether or not its status as holder is disputed. As Wilmington Trust pointed out in the trial court, its motion to set aside the judgment of foreclosure is not such an action.

App. 692, 697, 994 P.2d 911 (2000); *Carson v. Northstar Dev. Co.*, 62 Wn. App. 310, 316-17, 814 P.2d 217 (1991); *In re Marriage of Maddix*, 41 Wn. App. 248, 703 P.2d 1062 (1985).

Here, after the County and the Valdovinoses questioned whether Wilmington Trust was really the holder of the Note, the trial court decided the issue summarily. It did so without holding the County and the Valdovinoses to the usual initial burden of establishing the absence of a material fact. A court may summarily determine a material fact when it has been shown to exist without substantial controversy. CR 56(f). The County and the Valdovinoses never identified who they think the holder of the Note is, if not Wilmington Trust. They presented no evidence suggesting that Wilmington Trust's claim to hold the Note should be disbelieved. They did not make the required showing that Wilmington Trust is not the holder of the note.

We turn to Wilmington Trust's evidence. If Mr. Franklin's declaration was sufficient, we would hold that Wilmington Trust is entitled to a summary determination that it is the holder of the Note. His declaration comes close to being sufficient, but lacks the assertion that he has personal knowledge of the matters to which he attests. *See, e.g.*, *Guntheroth v. Rodaway*, 107 Wn.2d 170, 178, 727 P.2d 982 (1986) (affidavit lacking facts showing that the alleged awareness and familiarity were based on personal knowledge is insufficient). He may have personal knowledge, but he does not say so.

9

Mr. Franklin's identification of Ditech as the loan servicer sufficiently explains why he would have access to business records establishing that Wilmington Trust holds the Note. Contrary to the conclusions adopted by the trial court, a declaration from Mr. Franklin can satisfy the requirements of CR 56(e) and RCW 5.45.020 without stating that he works for Wilmington Trust, or has personally compared the original note to the attached copy, or personally knows that Wilmington Trust is the holder of the original note. *See, e.g.*, *Bavand v. OneWest Bank*, 196 Wn. App. 813, 826-31, 385 P.3d 233 (2016); *Barkley v. GreenPoint Mortg. Funding, Inc.*, 190 Wn. App. 58, 67-68, 358 P.3d 1204 (2015).

The trial court erred in summarily determining, effectively, that Wilmington Trust does not hold the Note. The deficiency in Mr. Franklin's declaration prevents us from deciding the issue in Wilmington Trust's favor as a matter of law, but Wilmington Trust is entitled at a minimum to an evidentiary hearing. *Cf. U.S. Bank Nat'l Ass'n v. Denisco*, 96 A.D.3d 1659, 1662, 949 N.Y.S.2d 309 (2012) (denying summary judgment to mortgage assignee because triable issues of fact were presented concerning its succession to title to the mortgage). Alternatively, since the County and the Valdovinoses seem unlikely to be able to prove by a preponderance of evidence that Wilmington Trust does *not* hold the Note, the trial court might wish to reopen the evidence for a summary determination.

II.   THE COUNTY'S EFFORTS TO NOTIFY WASHINGTON MUTUAL DID NOT SATISFY
STATUTORY AND DUE PROCESS REQUIREMENTS

RCW 84.64.050(4), set forth above, does not require personal service or mailing

and publication of notice, but requires notice reasonably calculated to inform, and

identifies those two means as sufficient.  In addition to satisfying the statutory

requirements, the County's notice must satisfy the due process requirements of the

Fourteenth Amendment to the United States Constitution, meaning it must be

"'reasonably calculated, under all circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections.'"

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S. Ct. 2706, 77 L. Ed. 2d

180 (1983) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S.

Ct. 652, 94 L. Ed. 865 (1950)).

In *Mennonite Board*, the Supreme Court considered whether notice by publication

and posting property provided a mortgagee with adequate notice of a proceeding to sell

the mortgaged property for nonpayment of taxes.  The Court held that notice by

publication and posting were not means that someone "'desirous of actually informing

the [mortgagee] might reasonably adopt to accomplish it.'"  462 U.S. at 799 (alteration in

original) (quoting *Mullane*, 339 U.S. at 315).  It held that "use of these less reliable forms

of notice is not reasonable where, as here, 'an inexpensive and efficient mechanism such

as mail service is available.'"  *Id.* (quoting *Greene v. Lindsey*, 456 U.S. 444, 455, 102 S.

11

Ct. 1874, 72 L. Ed. 2d 249 (1982)). The fact that a mortgagee is sophisticated and has means to discover an impending foreclosure does not excuse the government from the "relatively modest administrative burden of providing notice by mail . . . or other means as certain to ensure actual notice . . . if its name and address are reasonably ascertainable." *Id.* at 799-800.

In *Jones v. Flowers*, 547 U.S. 220, 225, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006), the Court considered whether the due process clause requires the government to take additional reasonable steps to notify a property owner when notice of a tax sale is returned undelivered. It observed that mailed notice is sufficient even if not actually received, as long as the government has no reason to believe the mailing failed. *Id.* at 226-27. But when the State's notice to Jones of a tax sale was returned, the government "had good reason to suspect . . . that Jones was 'no better off than if the notice had never been sent.'" *Id.* at 230 (quoting *Malone v. Robinson*, 614 A.2d 33, 37 (D.C. App. 1992)). It held that "[d]eciding to take no further action is not what someone 'desirous of actually informing' [the owner] would do; such a person would take further reasonable steps if any were available." *Jones*, 547 U.S. at 230. "What steps are reasonable in response to new information depends upon what the new information reveals." *Id.* at 234. One possibility in Jones's case, since the notice was sent via certified mail and was returned as "unclaimed," was to send the notice again, this time by regular mail.

The County and the Valdovinoses make several arguments why the County's notice satisfied the statutory and constitutional requirements for notice given in a manner reasonably calculated to inform. Among the arguments are that Wilmington Trust was not entitled to notice at all, because it had not recorded its interest with Okanogan County, and no notice needed to be sent to Washington Mutual's address, because it no longer existed.

In *Preston v. Cox*, 50 Wash. 451, 452-53, 97 P. 493 (1908), the Washington Supreme Court explained why it was reasonable in a tax foreclosure proceeding to require notice to an owner of record even when that person is known to be dead:

> [K]nowledge of the death is an immaterial factor. The purpose of the statute is to establish some standard by which a certificate holder may require all persons interested in the property to take notice of the pending procedure to foreclose. . . . By describing the name used in the tax records when the tax was assessed, and by so directing the notice, he may require all interested persons to take notice. The notice is not for the purpose of acquiring jurisdiction of any particular person, but rather of the property only, and when the assessment record is identified and the notice clearly and properly specifies the name used in that record as owner, then the real owner, who is charged with knowledge of who was the tax record owner, must take notice that the proceeding affects his land.

The same can be said of a corporate mortgagee that has dissolved. County treasurers would know that a corporate mortgagee's lien assets do not evaporate when it dissolves; they can be expected to be assigned. And the County owes a duty to assignees. "An assignee of a contract 'steps into the shoes of the assignor, and has all of the rights of the assignor,'" including applicable statutory rights. *Puget Sound Nat'l Bank v. Dep't of*

*Revenue*, 123 Wn.2d 284, 292, 868 P.2d 127 (1994) (quoting *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 495, 844 P.2d 403 (1993)). The rule that an assignment carries with it applicable statutory rights "is critical because whether a commercial paper transaction involves a borrowing or purchase, the lender or buyer must have confidence that the law is clear as to the rights and liabilities involved." *Id.* at 293.

Just as the certificate holder foreclosing the tax lien in *Preston*, should have directed notice to the owner of record despite knowing she was dead, the County should have directed notice to Washington Mutual at its address of record. Wilmington Trust argues that would have been sufficient here.[3]

It is next contended by the respondents that the County was entitled to rely on the erroneous address provided by the litigation guarantee, based on statutory language requiring the county treasurer, prior to sale, to "order or conduct a title search of the property." RCW 84.64.050(4). But that language appears in connection with an additional protection for a title holder or holders whose names do not appear as the owner or owners on the treasurer's rolls; it does not supplant or limit the treasurer's duty to give

---

[3] The respondents question whether Wilmington Trust would have received notice addressed to Washington Mutual at 1201 Third Avenue. We note that a party demonstrating a failure to give the statutorily required notice need not show prejudice. *In re Foreclosure of Liens*, 117 Wn.2d at 87 n.3. That said, a party taking assignment of a large number of mortgage interests might find it easier to arrange to receive mail at the address reflected on its assignor's recorded filings than to prepare and record notices in every county in which its security is located.

notice reasonably calculated to inform parties with a recorded interest such as

Washington Mutual and its assignees.

The County argues that it substantially complied with the statutory notice

requirement. In *Nguyen*, 148 Wn. App. at 554, this court assumed without deciding that

substantial compliance is all that is necessary under RCW 84.64.050. This court

observed, however, that "[s]ubstantial compliance means actual compliance with the

substance essential to every reasonable objective of a statute" and that the "reasonable

and expressly stated objective of the statute is to give notice 'in a manner reasonably

calculated to inform'"—in that case, to inform homeowners. *Id.* at 554 (quoting RCW

84.64.050(4)). Accordingly, when it comes to the statute's essential objective of

providing notice reasonably calculated to inform, actual compliance is required.

Mailing the notice and summons to Washington Mutual at an address different

from that provided by their recording was not notice reasonably calculated to inform. It

does not matter that the erroneous address was the result of the negligence of a title

insurer rather than the negligence of a county employee.

Upon learning that the mailing was undeliverable because there was "NO SUCH

NUMBER," posting notice at the encumbered property is not what someone desirous of

actually informing the lienholder would do, as required by due process. Even without the

benefit of hindsight, an obvious follow-up step when told there was "no such number"

would be to check the street number provided in the Deed of Trust. And while (as the

15

trial court found) it might not be "common" knowledge that Washington Mutual has anything to do with Chase Bank, the treasurer's staff might well be familiar with Chase's succession. The treasurer's staff would at least be familiar with the concept of bank succession and be able to determine what became, generally, of the assets of Washington Mutual.[4] When asked at oral argument what action the County took when its mailing was returned stating that the address provided did not exist, the County's attorney responded that it posted the property and "they do typically do some internet work just, if it's a human being, for example, to see if they can find an additional address." Report of Proceedings at 30.

The County's actions did not satisfy the statutorily and constitutionally required notice. We reverse the trial court's order denying Wilmington Trust's motion for revision and remand for further proceedings consistent with this opinion.

We are mindful of the difficulties this result creates for the Valdovinoses. Given the relatively modest amounts involved, the asserted windfall to Wilmington Trust in the form of property improvements, and the possible advantage to Wilmington Trust of

---

[4] An internet search for "Washington Mutual" yields, as one of its first results, a Wikipedia page on the former bank, whose introductory paragraphs state, "The FDIC sold the banking subsidiaries (minus unsecured debt and equity claims) to JPMorgan Chase for $1.9 billion" and "All [Washington Mutual] branches were rebranded as Chase branches by the end of 2009." *Washington Mutual*, WIKIPEDIA, https://en.wikipedia .org/wiki/Washington_Mutual [https://perma.cc/FTV4-N8U5].

16

disposing of this nonperforming asset, we hope the parties are able to come to a

reasonable resolution.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Lawrence-Berrey, J.